**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE ESTATE OF STEPHANIE
DAWN MELLON-REPPEN, by its
personal representative, ABBEY
REPPEN,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

_____/

Case No. 24-13300
Hon. Jonathan J.C. Grey

**OPINION AND ORDER**

This matter is before the Court on defendants' motion to dismiss (ECF No. 7) and plaintiff's motion to vacate the certificate of employment (the "certificate"). (ECF No. 12.) The motions are fully briefed. (ECF Nos. 11, 14, 18, 20.)[1]

## I.   BACKGROUND

The underlying facts of this case are undisputed for the purposes of the instant motions. On the evening of December 15, 2022, Stephanie

---

[1] Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispenses with oral argument pursuant to Local Rule 7.1(f).

Dawn Mellon-Reppen ran out of gas while traveling on Interstate 96 ("I-96") in Redford Township. Mellon-Reppen then exited her car and began walking on westbound I-96, at or near the intersection of Beech Daly where she was struck and killed by a vehicle driven by Special Agent Nicholas Robert Hill ("SA Hill"), a Special Agent of the Drug Enforcement Administration ("DEA"), who was driving a government vehicle. (*Id.* at PageID.3–4, at ¶¶ 11–13.) At the time of the accident, SA Hill was driving from his office to his home. (ECF No. 12, PageID.195.)

Reppen filed the present lawsuit on December 11, 2024 as the personal representative of Mellon-Reppen's estate. (ECF No. 1.) Reppen alleges that the United States is liable for negligence in relation to the fatal car accident. Reppen also sued SA Hill individually. (*Id.*) On February 19, 2025, pursuant to 28 U.S.C. § 2679(d)(1) and in accordance with the government's notice of substitution (ECF No. 5), the United States was substituted for SA Hill as the sole defendant. (ECF No. 6.)

The DEA has a "Home-to-Work Utilization Plan," ("HTW Plan") that sets forth the agency's procedures for official government vehicle ("OGV") use under 31 U.S.C. § 1344. (Exhibit A – HTW Plan at 1.) OGVs are only authorized for a DEA employee if they, or their official duties,

2

fall within one of two categories: (1) Field Work or (2) Criminal Law Enforcement. (*Id.*) SA Hill is a special agent and is categorized as Criminal Law Enforcement for purposes of the statute. (ECF No. 18 at 5.)

For a position to qualify as one of Criminal Law Enforcement, an employee must show a pattern of activity meeting the criteria. (Exhibit B – DEA Policy 6124.31(B)(3).) Factors that demonstrate such pattern of activity include: (1) ongoing caseload; (2) liaison; (3) lack of alternative transportation; and (4) (GM-1811) Official based on field management of operations […]." (*Id.*)

An employee may only use their OGV to travel between their home and work "when affirmatively authorized by statute." (Exhibit B – DEA Policy 6124.31(B)(3).) Once an employee is authorized to use a OGV for commuting purposes, OGVs may only be used for "official purposes," which is interpreted strictly. (*Id.*) However, an exception is made for "incidental personal use," which is secondary to the primary official use. (*Id.*) Thus, an employee using an OGV for an official purpose, "including home-to-work transportation when authorized," can make personal stops

so long as it is "reasonable in distance and does not negatively impact the mission of the agency." (*Id.*)

The DEA allows OGV use under § 1344 a(2)(B) for special agents ("SAs") because this authorization is "essential for the safe and efficient conduct of law enforcement duties." (Exhibit 1 – HTW Plan at 3.) The work of SAs "frequently involve[s] spontaneous recall to duty at locations other than their normal place of work, or where a spontaneous need arises for them to remain on duty after normal business hours at locations other than their normal place of work." (*Id.* at 2.) Thus, it is "not uncommon for a DEA SA […] to have completed his or her own work day only to be contacted by a counterpart law enforcement officer […], and thus need to respond after hours." (*Id.* at 6.)

Further, SAs may lack alternate, practical means of transportation (e.g., public transportation) because they can be "recalled to duty from their residence under circumstances in which response time is frequently a compelling if not overriding consideration." (*Id.*) While Reppen does not dispute the fact that DEA agents have to work irregular hours, she contends that the United States relies on the HTW Plan as a blanket

4

agency policy and does not present evidence that SA Hill was working irregular hours at the time of the incident. (ECF No. 20, PageID.290.)

## II.    MOTION TO VACATE

### A. Standard for Vacating Certificate of Employment

> In 1946, Congress passed the Federal Tort Claims Act (FTCA), which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment. In 1988, however, Congress passed the Federal Employees Liability Reform and Tort Compensation Act (Westfall Act). The act immunizes federal employees from individual common-law tort claims that arise while the employee was acting within the scope of their employment and substitutes the United States as the party defendant.

*Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024) (internal quotations and citations omitted).

Under the Westfall Act, the "certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). However, the Supreme Court has held that the Attorney General's scope-of-employment certification is subject to judicial review for purposes of substitution. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995); *see also Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990).

"The Attorney General's certification provides *prima facie* evidence that the employee was acting within the scope of employment." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). "Whether an employee was acting within the scope of their federal employment under the Westfall Act is governed by the agency law of the state in which the incident occurred" and is a question of law. *Laible v. Lanter*, 91 F.4th 438, 445 (6th Cir. 2024). Michigan has adopted the Restatement (Second) of Agency to define the scope of employment. *Zsigo v. Hurey Medical Center*, 716 N.W.2d 220, 221 (Mich. 2006).

However, "when a district court is reviewing a certification question under the Westfall Act, it must identify and resolve disputed issues of fact necessary to its decision before entering its order." *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1995).

### B. Applicability of *Bowman*

In this case, it is undisputed that the incident at issue occurred in Michigan. Under Michigan law, a person acts within the scope of employment if he is acting "while engaged in the service of his master, or while about his master's business." *Rector v. United States,* 243 F. App'x

976 (6th Cir. 2007) (quoting *Barnes v. Mitchell*, 341 Mich. 7, 15 (Mich. 1954)).

In general, Michigan courts have held that driving to and from work during the workday does not fall within the scope of employment. *Bowman v. R.L. Coolsaet Constr. Co.*, 738 N.W.2d 260, 263 (Mich. Ct. App. 2007). However, in the worker's compensation context, Michigan courts recognize six *Bowman* exceptions in which an employee was acting within the course of employment when commuting where one of the following circumstances was present:

(1) the employee is on a special mission for the employer,
(2) the employer derives a special benefit from the employee's activity at the time of the injury,
(3) the employer paid for or furnished employee transportation as part of the employment contract,
(4) the travel comprised a dual purpose combining employment-related business needs with the personal activity of the employee,
(5) the employment subjected the employee to excessive exposure to traffic risks, or
(6) the travel took place as a result of a split-shift working schedule or employment requiring a similar irregular nonfixed working schedule.

*Id.*

The government argues that these exceptions require a finding that SA Hill was acting within the scope of his employment, while Reppen disputes *Bowman*'s applicability in this case. While the *Bowman*

7

exceptions could make travel compensable under the Worker's Disability Compensation Act (WDCA), there is a distinction between worker's compensation benefits and employer tort liability. *Lopucki v. Ford Motor Co.*, 311 W.2d 338, 348 (Mich. Ct. App. 1981). The questions of respondeat superior and "scope of employment" are "not viable in a workmen's compensation analysis" where the statutory course of employment test applies which, although similar in name, involves a distinct analysis. *Id.* (citing *Thomas v. Certified Refrigeration, Inc.*, 221 N.W.2d 378, 381–382 (Mich. 1974)). However, this does not mean that the inverse is true, and that the workmen's compensation analysis is not viable in a respondeat superior context. *See, e.g., Spigno v. Precision Pipeline, LLC*, No. 14-10076, 2015 WL 519182 (E.D. Mich. 2015) (applying the *Bowman* factors to a respondeat superior context).

In support of her counterargument, Reppen points to *Guadagno v. Perry*, where a government employee received worker's compensation benefits but was denied certification for purposes of the Westfall Act. No. 96-60, 1997 U.S. Dist. LEXIS 22370 (W.D. Mich. Sept. 26, 1997). The *Guadagno* court reasoned that it was possible for the employee to be "in the performance of duty" to receive workers compensation benefits under

the Federal Employees Compensation Act ("FECA"), which generally uses the same "course of employment" test for WDCA benefits, but nevertheless outside the scope of employment under the FTCA. *Id.* The *Guadagno* court subsequently echoed the holding in *Thomas*: the "course of employment" test used in the worker's compensation context is different from the "scope of employment" standard applied in respondeat superior liability. 221 N.W.2d at 381–382.

Based on the cited authority, the Court finds that the "scope of employment" tests between the WDCA and respondeat superior are distinct but not mutually exclusive. For the foregoing reasons, the Court finds that the *Bowman* exceptions are applicable to this case. Consequently, the Court turns to Michigan caselaw which addresses the use of *Bowman* exceptions and analogous exceptions applied in the respondeat superior context.

### C. Exceptions Applicable Here

Michigan's developed caselaw appears to recognize six exceptions set forth in *Bowman* and as initially summarized in *Bush v. Parmenter, Forsythe, Rude & Dethmers*, 320 N.W.2d 858 (Mich. 1982). *Smith v. Chrysler Group, LLC*, 954 N.W.2d 214 (Mich. Ct. App. 2020). The Court

of Appeals has noted that these exceptions are "independent of the others" rather than factors to be balanced; thus, any one of the exceptions would be sufficient. *Id.* at 499 (interpreting *Bowman*). The Court examines whether any one of the five *Bowman* exceptions raised by the government apply.[2]

### 1. *Bowman* Exception #1

The government argues that five of the six *Bowman* exceptions are applicable to the circumstances in this case. The Court will consider each separately, beginning with the first exception: that "the employee is on a special mission for the employer." *Bowman,* 738 N.W.2d at 263. Generally, the Court will not consider arguments that are not fully presented or supported by relevant authority. *See McPherson v. Kelsey,* 125 F.3d 989, 996 (6th Cir. 1997). For the sake of the complete consideration of each exception presented by the government, the Court compiled authority to flesh out the government's argument that SA Hill was on a special mission for his employer at the time of the accident.

---

[2] The government argues that exceptions one through four and six are applicable in this case.

10

For an employee to be on a special mission under this exception they must have "identifiable time and space limits on [their] employment" and "make [] an off-premises journey which would normally not be covered under the usual going and coming rule." *Bush*, 320 N.W.2d at 862. (quoting 1 Larson, Workmen's Compensation Law, § 16.10, p 4-123). The "travel to and from the special mission" would not fall within the general bar of employer liability under the going and coming rule. *Id.*

In the cases where this exception applies, the employee is in route to or from an identifiable engagement which was separate from their typical employment limits. *See, e.g., id.* (the employer encouraging its employees to attend "educational seminars . . . was in effect sending Bush on a special mission"); *Weinstein v. UGS Corp.*, No. 07-15000, 2008 WL 1766657, at *4 (E.D. Mich. Apr. 17, 2008) ("employer directed the employee to attend an appointment during the workday").

The government has not made a clear argument about what made SA Hill's travel at the time of the accident a special mission. It is possible that the government intended to apply SA Hill's use of an official vehicle which gave him the ability to respond to investigation requests "24/7" as evidence of a special mission and a special benefit to his employer as it

11

relates to *Bowman* exceptions one and two respectively. (ECF No.18, PageID.255.) However, this "24/7" availability does not amount to a special mission because it does not allow for SA Hill to have been in transit to an engagement that went beyond the identifiable time and space limits of his employment as the standard for this exception requires. Without any other rationales for SA Hill being on a special mission at the time of the accident, the Court is left with the undeniable conclusion that he was merely traveling home after his workday. Traveling home as he would travel each day does not amount to a special mission for the purposes of this exception. *See, e.g.*, *Xin Wu v. Johnson*, No. 294250, 2011 WL 891106, at \*3 (Mich. Ct. App. Mar. 15, 2011). Therefore, the first *Bowman* exception is not applicable to SA Hill's travel at the time of the accident.

### 2. *Bowman* Exception #2

Next, the Court turns to the second *Bowman* exception which applies to accidents that occur while the employee is on their way to or from work when their "employer derives a special benefit from the employee's activity at the time of injury." *Bowman*, 738 N.W.2d at 263 (citing *Stark v. L.E. Myers Co.*, 228 N.W.2d 411 (Mich. Ct. App. 1975)).

12

To meet this exception, the alleged benefit must be "special" to the specific employee/employer relationship at issue and not something that is a "benefit common to all employers." *Stark*, 228 N.W.2d at 444. Thus, an employee must be doing something beyond the mere act of driving home for the employer to derive a special benefit. *Bowman*, 228 N.W.2d at 263.

The government argues that by driving a government-issued vehicle for the purpose of being available and able to respond to an investigation "24/7" and "from any location at a moment's notice," SA Hill's actions went beyond driving and his employer derived a benefit from his activity at the time of the accident. (ECF No. 18, PageID.255.)

While presenting their "on-call" theory for this exception, the government did not rely on authority applying Michigan law. Mellon-Reppen argues that the Court cannot weigh this authority in this case. (ECF No. 20, PageID.295.) The Court agrees. The scope of employment inquiry for the purposes of the Westfall Act must be "determined in accordance with the law of the state where the incident occurred." *Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir. 1990). Accordingly, the authority

cited by the government under this exception is not binding on the Court because it reflects the law of other states.

Mellon-Reppen argues that, in accepting the government's "on-call" theory *as presented*, the Court would be "vastly expanding the doctrine of vicarious liability in Michigan." (ECF No.20, PageID.293.) The Court agrees. Michigan courts have not yet addressed whether an employee being on call 24/7 provides a special benefit to their employer for the purposes of this exception to the going and coming rule in the respondeat superior context. However, the Michigan Court of Appeals addressed this issue in the parallel workmen's compensation context as a matter of first impression in *Chambo v. City of Detroit*, 269 N.W.2d 243 (Mich. Ct. App. 1978).

In *Chambo*, a full-time police officer for the Detroit Police Department (DPD) sought benefits for injuries he sustained while in an accident on his way to work. *Id.* at 243. The incident occurred in Dearborn. *Id.* The DPD required their officers to "respond to a crime being committed whether on duty or not." *Id.* The officer argued that the DPD "benefitted from the requirements of being a police officer." *Id.* at 245. In evaluating this argument, the court focused on the on-call

14

requirement and the strongly implied requirement for a DPD officer to be in uniform while traveling to and from work. *Id.* The court concluded that on-call status did not provide a special benefit to an employer sufficient to overcome the going and coming rule when the employee's conduct was not adequately connected to his employment. *Id.* at 246. The court reached this conclusion in part to address the dangers associated with similarly situated on-call employees "recovering for injuries received while at home, a party, or on a personal mission" and the need to draw a line to "avoid absurd results in future cases." *Id.* at 245.

These concerns are equally relevant in applying similar treatment to an "on-call" employee in the respondeat superior context. The doctrine of vicarious liability is justified by the belief that an employee's tortious liability can be attributed to their employer because "a master is responsible for the wrongful acts of his servant committed while performing some duty within the scope of his employment." *Rogers v. J.B. Hunt Transp.*, 649 N.W.2d 23, 26 (Mich. 2002). Michigan courts are insistent that employers not be held vicariously liable for acts outside the scope of employment because the employee is "not acting for the employer" or under their control. *Id.* Michigan courts have agreed that

15

travel to and from work is outside the scope of employment by applying the going and coming rule as a default. Michigan courts are unlikely to apply one of the recognized exceptions to this rule in a way that would render the general rule ineffective since it would go against the core principle driving vicarious liability. Yet, allowing an employee's on-call status to be the sole justification for an employer receiving a special benefit from the employee would do just that.[3] Therefore, other Michigan courts would likely adopt the workmen's compensation rule in the respondeat superior context.

This conclusion is supported by other jurisdictions that take a similar approach and state that being on-call is not enough to bring an employee within the scope of employment. *See, e.g.*, *Merlonghi v. United States*, 620 F.3d. 50, 55–56 (1st Cir. 2010) (concluding that the "mere fact of being on call does not place employees within the scope of their employment" and the employee was not within the scope of his employment when he was "not traveling to a work assignment"); *Elhenfield v. State*, 404 N.Y.S.2d 175, 177 (N.Y. 1978) (an on-call

---

[3] If merely being "on-call" could bring an employee within the scope of employment, then the going and coming rule would be essentially eradicated for an entire class of employees.

employee was not subject to his employer's control or within the scope of his employment when he was transporting a refrigerator to his work station); *Hantke v. Harris Ice Mach. Works*, 54 P.2d. 293, 295 (Or. 1936) (an on-call employee was not within the scope of his employment while on the road for personal purposes before reporting to work since he was not engaged in any work-related call at the time of the accident).

The *Chambo* court decided that the employee's conduct was not adequately connected to his employment because he was not within the DPD's jurisdiction at the time of the accident. *Chambo*, 269 N.W.2d at 245. The court narrowly ruled based primarily on the facts before it, which leads to the conclusion that being within the employer's jurisdiction is not the only consideration that will be relevant to this analysis. In fact, in reaching its conclusion the *Chambo* court also considered the fact that the employee "was not injured while actively participating in police conduct." *Id.* Notably the court supported their reasoning by highlighting that it would be unrealistic to allow compensation for any accident an employee sustained when off duty because "he was subject to call and required to act as a policeman should

17

the occasion require." *Id.* (quoting *Matter of Blackley v. City of Niagara Falls*, 130 N.Y.S.2d 77, 79 (N.Y. App. Div. 1954)).

In this case, it is undisputed that SA Hill was on his way home from work after completing his regular work hours for the day. Although the nature of his position made him subject to return-to-work calls, that alone does not suffice to render him within the scope of his employment. He, like the employee in *Chambo*, was not actively doing anything related to his role as a special agent at the time of the accident. *See also Bukowski v. Michigan Twp. Participating Plan*, No. 262564, 2005 WL 2656096, at *3 (Mich. Ct. App. Oct. 18, 2005) (affirming the trial court's finding that the plaintiff officer was not acting in the course and scope of his employment at the time of the accident when he was on his way to work and thus nothing about his conduct could be understood as providing a benefit to the township). *Cf. Botke v. Chippewa Cnty.*, 533 N.W.2d 7, 8 (Mich. Ct. App. 1995) (defendant county derived a benefit from plaintiff although he was off duty because, at the time of the accident, he was operating the county's only active on-road patrol vehicle, remained in radio contact with defendant, and was subject to immediate dispatch); *Foster v. Szlaga*, No. 324837, 2016 WL 805583, at *4 (Mich. Ct. App. Mar.

18

1, 2016) (distinguishing *Chambo* and finding that police officer was in a position to benefit defendant county because he possessed and maintained a member of the canine unit at all times). Thus, SA Hill's conduct at the time of the accident was not adequately connected to his employment and did not provide the government with a special benefit which would merit a departure from the going and coming rule. Therefore, the second *Bowman* exception is not applicable.

### 3. *Bowman* Exception #3

Next, the government briefly invokes the third exception: "the employer paid for or furnished employee transportation as part of the employment contract." *Bowman*, 738 N.W.2d at 263. For the sake of the complete consideration of this exception presented by the government, the Court has searched Michigan's caselaw. Michigan courts have provided limited guidance on the application of this exception in the respondeat superior context. Thus, the Court turns to analogous decisions in the workers' compensation context for guidance.

In *Bowman*, the Michigan Court of Appeals declined to apply the third exception where the employer furnished an employee's transportation through a separate agreement and was not part of the

19

employment contract. *Id.* at 264 (holding that the third exception did not apply even though an employer "paid for" the employee's transportation because the payment was the result of a "separate agreement between the employee and employer and was not part of the employment contract"); *see also Dykes v. Singh*, No. 299356, 2012 WL 3590046, at *3 (Mich. Ct. App. August 21, 2012) (declining to apply the third exception for incidental transportation arrangements); *Xin Wu*, 2011 WL 891106, at *4 (declining to apply the third exception, even though the employer reimbursed for certain trips, because the employee was "simply reporting to [work] as he did on a daily basis").

Here, it is undisputed that SA Hill was authorized to use an OGV for work-to-home travel as set forth by the DEA's HTW Plan. (ECF No. 18, PageID.248.) SA Hill obtained this authorization through a separate certification process and form, which had to be re-evaluated on a quarterly basis for continued use. (ECF No. 18-2, PageID.273.) For the third exception to apply, the DEA must have paid for or furnished SA Hill's transportation *as part of the employment contract.* There is no evidence that this arrangement was part of the employee's core employment contract. Nor has the government cited any authority

suggesting that a separate certification process sufficiently converts a discretionary commuting policy into a contractual obligation. The nature of the 90-day recertification process supports the opposite conclusion: that OGV commuting privileges are temporary, conditional, and revocable, which points to an incidental, rather than essential, term of employment.

Nonetheless, the analysis is complicated by the fact that the DEA furnished the OGV to SA Hill at the time of the injury. The court in *State Farm Mut. Auto. Ins. Co. v. Roe*, 573 N.W.2d 258, 264 (Mich. Ct. App. 1997) recognized that transportation, even if not explicitly part of an employment contract, may become "such an essential incident of the employment as to be a part of it." However, this case is distinguishable because the employer was driving an employee in his car from work to home, so the employer actually provided the transportation. *Id*. at 261.

Similarly, in *Pappas v. Sports Services, Inc.*, 243 N.W.2d 10, 13 (Mich. Ct. App. 1976), the court stated that, when an employer guarantees transportation or provides a vehicle, "it is probable that the employer has contracted for the employee's travel and that […] the travel itself is employment." However, the court ultimately disagreed with the

21

plaintiff's theory that the "employer paid for or furnished employee transportation" because there was no special arrangement for travel expenses or wages, and because the travel was of no particular benefit to the employer, other than the benefit that all employers receive by their employees' presence at work. *Id.* at 429–430. Here, there is no evidence that travel expenses or wages were made for SA Hill's commute from work to home.

Moreover, the DEA did not gain a particular benefit from SA Hill driving from work to home, as previously established. While the DEA's policy authorizes OGV use for home-to-work travel because it promotes "safe and efficient" conduct given an agent's "on-call" status, Michigan courts have not embraced a categorical rule that an "on-call" designation transforms all commuting into the employer's business. Nor have they held that an agency's efficiency or safety rationale, standing alone, suffices to render transportation a contractual obligation. In *Chambo*, the court expressly rejected a similar argument, holding that an employee who had finished regular work and had not been called back was not acting within the scope of employment merely by being on call. 269 N.W.2d at 246; *see also Bukowski*, 2005 WL 2656096, at *3; *Botke*, 533

22

N.W.2d at 8 (officer within the scope of employment when driving county's only active on-road marked patrol vehicle); *Wolland v. Indus. Comm'n*, 434 N.E.2d 1132, 1134 (Ill. 1982) (collecting cases).

Thus, even acknowledging SA Hill's "on-call" status and the DEA's operational justification, the weight of Michigan law suggests that OGV use for home commutes remains incidental to the employment relationship. Accordingly, the third exception to the going-and-coming rule does not apply, and SA Hill's employee's travel at the time of the incident falls outside the scope of respondeat superior.

### 4. *Bowman* Exception #4

Next, the government briefly invokes the fourth exception: that "the travel comprised a dual purpose combining employment-related business needs with the personal activity of the employee." *Bowman*, 738 N.W.2d at 263. Under this exception, the plaintiff's commute from work must be for "employment-related business needs." *Id.* at 264. Similarly, in the contexts of respondeat superior and work-to-home travel, Michigan recognizes a "dual-purpose" rule, which has been reduced to a simple formula: "[i]f a special trip would have had to be made if the employee had not combined this service with his going or coming trip, the dual

23

purpose rule applies." *Thomas*, 221 N.W.2d at 631 (citing *Burchett v. Delton-Kellogg School*, 144 N.W.2d 337 (Mich. 1966)).

Reppen cites to *Ten Brink v. Mokma* for the proposition that if "the trip would not have been made but for the private purpose of the servant, he is out of the scope of his employment in making it." 163 N.W.2d 687 (Mich. Ct. App. 1968).  Altogether, if SA Hill's trip home was unrelated to DEA's business needs or would not have been made *but for* his own private purpose, then SA Hill was outside his scope of employment.

Here, it is uncontested that SA Hill was making a routine drive home after work. (ECF No. 12, PageID.195.) He argues that his commute was related to his employment and made *but for* his own private purpose because the DEA requires him to drive home in an OGV; however, the act of using an OGV and the act of driving home are different. It follows that, but for the DEA's policy, SA Hill would not have been driving an OGV for his work commute. On the other hand, it does not follow that, but for the DEA, SA Hill would not have been driving home *in general.*

There is no evidence that the DEA instructed SA Hill to drive home or requested him to perform any service at the time of injury. *See Dykes*, 2012 WL 3590046 (rejecting a dual-purpose argument because there was

24

"no evidence that [the employer] decided to let [the employee] leave the office" and "no evidence that [the employee] intended to perform any service of benefit to [the employer]"). Therefore, SA Hill's trip was unrelated to the DEA's business needs and, subsequently, would not have been made but for his own private purpose.

The government also mentioned that the DEA derives a "special benefit" from SA Hill driving home in an OGV, and it is unclear if the government is attempting to use this "special benefit" to establish a "dual purpose." Nonetheless, an employer generally does not receive special benefits from an employee's travel from work. *Bowman*, 738 N.W.2d at 260. Thus, this Court finds that the DEA did not derive a "special benefit" from its employees driving home *in general*, as established above.

Without the showing that SA Hill's work-to-home commute served a dual purpose, his actions were not within the scope of employment at the time of the incident. Accordingly, this Court does not find that SA Hill meets the fourth *Bowman* exception.

### 5. *Bowman* Exception #6

Lastly, the Court turns to the final *Bowman* exception raised by the government which allows for travel to or from work to be within the scope

25

of employment when it "took place as a result of a split-shift working schedule or employment requiring a similar irregular nonfixed working schedule." The government argues that by being an "on-call" employee who is subject to work hours which mirrors the "irregular schedule of drug traffickers," SA Hill works an irregular nonfixed working schedule which brings him within the bounds of this exception to the going and coming rule. (ECF No.18, PageID.255.) The Court disagrees and refers to the reasoning above which discusses on-call employees generally, which largely overlaps with the government's split-shift argument. *Supra* section II.C.2.

This exception generally applies when the employee is acting based on an "employer's direction to deviate from the regular normal working schedule" and therefore is placed into an "interrupted and irregular schedule." *McClure v. General Motors Corp., Fisher Body Div., Fleetwood Plant*, 289 N.W.2d 631, 633 (Mich. 1980). While the Michigan Supreme Court acknowledged that the exception could apply to "employment requiring a similar irregular nonfixed working schedule," both applications of the exception have been limited. *Bush*, 320 N.W.2d at 866 n.6.

The split-shift portion of the exception has been considered and applied as it relates to employee's leaving their job during lunch breaks because the nature of the split-shift required it. *See, e.g.*, *Howard v. City of Detroit*, 139 N.W.2d 677, 680–681 (Mich. 1966) (the employee was within the scope of his employment because the 5-hour interval caused by his split-shift created the "special circumstance" of him leaving his workplace to get lunch before his work was complete, which was atypical); *McClure*, 289 N.W.2d at 633. (the employee's off-premises lunch time activities were not covered by the exception because they occurred within the scope of their "regularly scheduled normal workday lunch").

The nonfixed work schedule portion of the exception is even more limited as it appears to require that an employee be engaged in employment "without fixed hours" and that requires "travel upon the highway." *Wilhelm v. Angell, Wilhelm & Shreve*, 234 N.W. 433, 434 (Mich. 1931). In *Wilhelm*, the employee was required to travel about twenty-five miles to fulfill a work obligation when the incident occurred, and he had no "stipulated hours" of employment. *Id.* In deciding that the employee's injuries were compensable, the court considered the nonfixed

27

work schedule as it related to the dangers posed by the employee's required travel. However, *Wilhelm* is of limited utility due to its age and the fact it involved an employee traveling from site to site as part of his employment. *See Salenbien v. Arrow Unif. Rental Ltd. P'ship*, No. 326957, 2016 WL 4419868, at *7 (Mich. Ct. App. Aug. 18, 2016) (characterizing this exception as one where "travelling from site to site is the essence of the employee's job")

There is no indication that SA Hill was subject to an employer directed deviation to his regular work schedule on the night of the accident. Although the government provided that SA Hill was required to respond to investigations, which would require travel, there is nothing in the record that suggests these were long periods of travel nor that SA Hill was traveling to a site as part of his employment, as was the case in *Wilhelm*. The government also did not provide any authority which suggests that the nonfixed work schedule has been considered outside of the narrow context of the case that gave rise to the exception. *Id.* Therefore, SA Hill's "on-call" status and expectation to travel to investigations is not enough for the nonfixed work schedule exception to apply.

28

## III.   CONCLUSION

Accordingly, SA Hill was not within the scope of his employment at the time of the accident at issue in this case. Thus, Mellon-Reppen's motion to vacate the certification of scope of employment (ECF No. 12) is **GRANTED**.

**IT IS HEREBY ORDERED** that the government is removed as a defendant from this action and that Nicholas Robert Hill is reinstated as the sole defendant in this case.

**IT IS FURTHER ORDERED** that this action is dismissed pursuant to Fed. R. Civ. P. 12(h)(3), because the determination that SA Hill was not within the scope of his employment amounts to a failure of a required element of the Federal Tort Claims Act, which provided the Court with subject matter jurisdiction. Diversity jurisdiction is not present in this case as there is not complete diversity of citizenship. Since the Court is dismissing this action on lack of subject matter jurisdiction grounds, the pending motion to dismiss (ECF No. 7) is **DENIED AS MOOT**.

**s/ Jonathan J.C. Grey**
JONATHAN J.C. GREY
Dated:  March 31, 2026          UNITED STATES DISTRICT JUDGE

29

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

<u>**s/ S. Osorio**</u>
**Sandra Osorio**
**Case Manager**